### MURRAY P. BREWER v. BOWLING GREEN (VILLAGE) ET AL.

1. INVALID, UNLESS ASCERTAINMENT OF PROBABLE OR ACTUAL COST OF IMPROVEMENT, AND FIXED TIME FOR PAYMENT.

    Special assessments for a street improvement in an incorporated village, to be valid, must be made by the council either after estimate of the probable costs and expenses of such improvement, or after the actual amount thereof has been ascertained; and a definite time for the payment of the assessment must be fixed by the council.

2. CLERK'S SENDING ASSESSMENT TO AUDITOR IS VOID UNLESS COUNCIL HAS DETERMINED THE AMOUNT AND TIME OF PAYMENT.

    The council of an incorporated village, upon the requisite petition of property owners, by resolution, duly declared the necessity for the improvement of a part of a certain street by grading, draining and macadamizing the same, and afterwards duly provided by ordinance for the making of said improvement, and which ordinance declared that the costs and expenses of said improvement should be assessed upon the lots and lands abutting on said improvement according to the foot front, and designated the lots by their respective numbers, and further provided that the bonds of said village should be issued in anticipation of the collection of said assessments, and that said assessments should be extended over a period of five years, and should be payable semi-annually, but did not otherwise determine the amount or fix the time of payment of said assessments. After the completion of the improvement, the clerk of the village, without further action or direction of the council as to said assessments, certified said assessments to the auditor of the county, to be entered on the tax duplicate for collection. Held, that said action of the clerk was unauthorized, and that a property-owner against whose land an installment of such assessments is placed by the auditor on the duplicate, may enjoin the same.

3. NO CORRECTION OF ASSESSMENT WHICH HAS NOT BEEN MADE.

    Section 2289, Revised Statutes, has no application where no proper ordinance fixing the assessment has been passed, and that this court will not, before any assessment whatever has been made by the council, enter upon an inquiry as to what amount of said costs and expenses should be charged against the plaintiff's land.

4. COUNCIL SHOULD FIX THE DEPTH OF LAND IN BULK

    Semble, that where the plaintiff's said land is a large out-lot, the council should restrict an assessment to the proper portion of it, as where land is in bulk they should fix the depth.

Error to the Court of Common Pleas of Wood county.

BENTLEY, J.

This is an action brought by the plaintiff to restrain the collection of a certain assessment for an improvement of a street in front of plaintiff's land in the village of Bowling Green, Ohio, it being claimed by him that the assessment was unauthorized.

He says in his petition that the defendant, the village of Bowling Green, Ohio, is a municipal corporation; that the defendant William Noyes is the treasurer of Wood county; that the plaintiff is the owner of outlot No. 42 in said village.

He further says that a petition asking for the improvement of that part of Main street in said village, lying between the intersections of Pearl street and the Napoleon road with said Main street, was presented to the council of said village, at a regular session thereof, held upon May 26, 1890; that said petition was signed by plaintiff and others, who represented the ownership of two-thirds the feet front of the land abutting upon such improvement, and stipulated that said improvement of said Main street, between the intersections of Pearl street and the Mount Pleasant Ridge road therewith, should consist in macadamizing the same, and in constructing the necessary drains, culverts and restraining walls; and said petition further stipulated that the improvement of that part of Main street lying between the intersections of said Ridge road, and the Napoleon road therewith, (between which said intersections and fronting on Main street lies the land of the plaintiff hereinbefore described) should consist in macadamizing the central sixteen feet thereof, and providing earth gutters therefor.

And said petition stipulated that the cost and expenses of said improvement should be assessed upon the lands abutting thereon by the foot front, in proportion to the amount

paid by the owners of the land abutting the same for the improvement of said 'Main street north of said Pearl street intersection, in ratable proportion to the width thereof; a true copy of said petition, excepting the names signed thereto, is hereto attached, marked Exhibit "A." That the said council accepted said petition, and thereupon, at its meeting upon May 26, 1890, passed a resolution declaring the improvement described in the petition to be necessary, and that the same should be constructed and the expense thereof assessed in the manner stated in said petition and according to law and the ordinances upon the subject of assessments. A true copy of said resolution is hereto attached marked Exhibit "B." That on June 30, 1890, said council passed an ordinance ordaining such improvement, and providing therein that the same should be proceeded with in accordance with said resolution and in accordance with the plans and specifications upon file in the office of the clerk of said village, and providing also that the assessment therefor should be made payable in ten semi-annual installments. A true copy of said ordinance is attached to the petition, marked Exhibit "C."

That further steps were taken and proceedings had by said council, under and in accordance with which, and in accordance with the prayer of said petition for the same, said improvement was made and completed.

That upon July 6, 1891, a committee was appointed by said council to compute the assessment to be made against the land abutting upon said improvement; that said committee thereafter made its report to the council, setting forth in said report the amounts to be assessed against the lands abutting said improvement, and stating the amount to be assessed against plaintiff's said lot number 43 to be $7099.50, said lot having a frontage upon said improvement of 1100 feet, and said computation being made at the rate of 64½ cents per foot, which the plaintiff says is greatly in excess of the amount authorized by said petition and the resolution passed by said council. Thereupon a levy was certified to the auditor of said county by the clerk of said village without any other or further proceedings being had by said council.

Plaintiff avers that no ordinance or resolution was ever passed by said council assessing against the land abutting thereon the amounts to be paid by the owners thereof for said improvement; that no valid levy was ever made; that said clerk was not authorized to certify such levy to said auditor, and his proceedings in respect thereto were wholly unwarranted and unauthorized, and without authority in law, and said levy was and is wholly illegal and void. That the auditor of said county has caused such unlawful levy to be entered upon the tax duplicate of said village, and has directed the treasurer of said county to charge and collect the same from plaintiff upon said land. That the amount of the levy so made against the plaintiff's land was $184.46 and was intended to be one-fifth of the entire assessment thereon, with the interest accrued upon the bonds outstanding, issued by the council in payment of the improvement added thereto. Plaintiff says that for the reason that no assessment ordinance has been passed and no valid levy made, no part of said assessment has become due and the same cannot lawfully bear interest and plaintiff is not chargeable with such interest.

Plaintiff further says that his land so designated and described as outlot No. 43, is land in bulk, and has never been platted or subdivided into town lots; that said lot has a uniform depth the entire length of the same of 522 feet, running west from the west line of said Main street; that the fair average depth of lots in the neighborhood of plaintiff's said land which abut upon and are assessed for said improvement, is 138 feet. That said council has never determined upon or fixed the depth of plaintiff's said land as required by law, and the pretended levy so made as aforesaid against the entire tract, creates a lien against, and casts a cloud upon a considerable portion of said land not liable to the payment of said assessment.

Plaintiff says that according to the stipulations and conditions of the petition for said improvement hereinbefore set forth, only the sum of $400.00 could be legally assessed against him for said improvement, this being the amount proportioned to the cost of the Main street improvement north of said Pearl street intersection, and that said sum of $400.00 greatly exceeds the benefits to said land derived from the improvement; but plaintiff admits that his said land would be liable to an assessment in this amount, and says that had all the proceedings hereunder been legal and regular, one-fifth of said sum could now be collected from him. And plaintiff upon November 20, 1891, tendered to said treasurer the sum of eighty dollars, being the total amount which may be lawfully assessed for said improvement for the present year; but said treasurer refused, and still refuses to receive said sum, without payment of the amount illegally charged, to-wit, the sum of $104.46. And said treasurer intends and threatens to enforce the collection of the full amount of said levy with the penalty thereon and to sell said property at a tax sale, or otherwise to distrain plaintiff's property therefor, to the great and irreparable damage of plaintiff." The plaintiff prays that the levy and assessment may be adjudged to be illegal and void, and that the treasurer be enjoined from collecting the same, and for further and proper relief.

Now, among the claims that the plaintiff makes, is that the council of the village never in fact assessed his lands; that the clerk of the village, without authority, certified up to the county auditor what he claimed to be costs and

expenses of an improvement chargeable to the plaintiff's land, and the auditor placed it upon the duplicate.

The plaintiff claims, then it was necessary for the council to take further action than it did before the clerk had any such authority; that although the street was improved upon a petition signed by the owners of the land abutting upon it, and costs and expenses have been incurred, yet these costs and expenses never were in fact assessed by order of the council.

It appears that the council passed a resolution declaring the necessity for the said improvement, and also passed an ordinance for the improvement, providing that the costs and expenses thereof should be assessed upon the lands abutting upon the improvement according to the foot front, and that the assessment should be divided into five parts, and be payable in semi-annual installments in five years, but did not otherwise fix the time of payment or determine the amount to be assessed, and never by resolution or ordinance directed the clerk to certify it to the auditor.

On one hand it is claimed that this action by the council itself constitutes an assessment by the council upon the lands, and that, when the costs and expenses were ascertained by the clerk, he had the right to certify them to the county auditor.

The order of proceedings for the making of a street improvement such as the one here in question is provided by statute. On the filing of the petition by the requisite number of property owners, as required by sec. 2305 Rev. Stat., the council declares the necessity of the improvement (Sec. 2304), and gives or causes to be given, notice to the land owners, and, by ordinance, before the improvement is made determines what lots and lands shall be assessed, and the manner of making the assessment (Sec. 2264), and either in the same ordinance, or by another ordinance, provides for making the improvement (Sec. 2305).

When such ordinance is enacted, the village council may designate two of the petitioners to act with the engineer as a board of supervisors of the improvement. (Section 2306). This board, after its selection, makes an estimate of the expenses to be incurred in making the improvement, and reports such estimate to the council, "which shall charge the same on the lots or lands abutting on such street or part thereof improved, which charge may be made in one or more assessments." (Sec. 2311). It also provides in section 2264, that the costs and expenses "shall be assessed by the council."

The basis of this assessment is the estimate of costs and expenses to be incurred, and this estimate (as, evidently, the actual assessment) is to be made after the ordinance for the improvement has been passed. Again, by sec. 2316 it appears that assessments for damages may be made after the completion of the improvement.

It is clear, therefore, that the assessment is to be made by the council, and after the passage of the ordinance providing for the improvement.

We think it clear also that the council must fix the date for the payment of an assessment.

Now, one section of the statute provides for the city of Toledo at least (although it does not seem to apply here), that a penalty of fifteen per cent. shall be paid, unless these installments shall be paid when due, and there is a provision also for the collection of the assessments when due; and there is a provision that if any assessment shall pe unpaid, the council may order the clerk to certify it to the county auditor.

All of this will be found upon examination to require the council to fix the time and date when the assessments shall be paid. The nearest that the council came to doing this in this case, was to say that they shall be paid semi-annually, and we think that is not fixing the date for the payment.

We conclude that there was a lack of legal proceedings by the council to make this assessment, and if the clerk was unauthorized to certify it up, there is no

assessment of any kind, either of right or wrong amount, and what assumes to be an assessment, is only apparently so by its being upon the duplicate.

What these lands should be assessed for was argued at some length by counsel, but we find that in the first instance, it is necessary for the council to make the assessment and to determine the amount and time when payable. If the council had undertaken to do that, and had ordered an illegal assessment, upon application of a proper party to this court, it is quite possible that this court might modify the assessment and reform it, or make some order that would leave a portion of the assessment on the tax duplicate; but we think this court has no power to do that except in cases where some assessment has already been made as a basis for the court's action. In this case also, there is no application by any party for this court to do anything of that kind; the plaintiff makes complaint of the whole assessment as illegal, and the defendant denies it, and simply asks that the case be dismissed. There is no application for affirmative relief. In actions to collect an assessment, or to enforce its lien, the court may ascertain and charge the proper amount when by some technical defect it is improper.

Section 2287, Revised Statutes, reads:

"Proceedings for the recovery of the assessment may be instituted by the corporation against all the owners, or each or any number of them; or to enforce the lien against all lots or lands, or each lot or parcel, or any number of them embraced in any one assessment; but the judgment or decree shall be rendered severally or separately for the amount assessed; and any proceeding may be severed in the discretion of the court for the purpose of trial, review or appeal, where an appeal is allowed."

Section 2288, Revised Statutes, reads:

"In proceedings to enforce the lien, when the owner of any lot or land assessed is a nonresident of the state, or is unknown, notice shall be given by publication in the manner prescribed by law in similar cases."

Section 2289, Revised Statutes, reads:

"If in any such action it shall appear that by reason of any technical irregularity or defect—whether in the proceedings of the board of improvements, or of the council, or of any other officer of the corporation, or in the plans and estimates—the assessment has not been properly made against any defendant, or upon any lot or parcel of land sought to be charged, the court may, nevertheless, on satisfactory proof that expense had been incurred which is a proper charge against such defendant, or lot or parcel of land in question, render judgment for the amount properly chargeable against such defendant or such lot or land; but in such cases the court shall make such order for the payment of costs as may be deemed equitable and proper."

These are the only sections that our attention has been called to, or that we know of, bearing upon the proper order to be made in case of an erroneous assessment for a street improvement, and while it is quite probable that a like order might be proper on a cross-petition, as upon a petition where an assessment is sought to be enforced, yet this is not an action such as is contemplated by section 2289, and section 2290 appears to provide the proper remedy.

As the law confers upon the council the right to declare these assessments necessary and to determine the amount and time of payment, it would not be proper for a court before the council has acted to suggest to it what its action should be in the premises.

Now, it is quite probable that on an application to the council when it is to determine the assessment, it may determine it upon proper rules, and make it payable at proper times and in proper amounts, and until the council have exercised a judgment of some kind, we think it would not be proper for this court to exercise its own judgment as to these amounts.

It would seem to us from the section of the statute regarding the depth of the land which should be subject to this assessment, that it would be proper for the council to fix that with relation to the other lots in the immediate vicinity, and we have no doubt that on the matter being presented to the council, proper action will be taken.

We might be going beyond our province in suggesting anything about the sewer. This so-called sewer, it would seem to us, is not strictly a sewer, but a drain, and if a reasonable, proper and necessary one, its cost is a part of the costs and expenses of the street improvement.

We would be embarrassed anyway in determining the proper amount to be assessed in view of the petition for the improvement. It is a matter which the council may well deal with.

The petition was for an improvement, not only south of the Ridge road, but south of Pearl street, and all of the parties signed the one petition, and they talk about the expenses of the "improvement," and the query would come up, " what is the improvement?"—whether for the whole improvement under that one petition, or simply that part of it south of the Ridge road or in front of the plaintiff's land; but as I say, we are not deciding on that.

We think the matter ought to be remanded to the council to make an assessment in view of the bonds that have been issued, and it is to be supposed that the council will act properly.

So the petition of the plaintiff will be granted so far as this alleged assessment is concerned, but of course without prejudice to the right of the council and proper officers to make a proper assessment, and costs will be adjudged against the village.

Baldwin & Harrington, for plaintiff.

J. O. Troup and James F. Conley, for defendant.